Robert SANCEVERINO, Plaintiff,

v.

UNION LOCAL 445, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA; McLean Trucking Co., and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

No. 78 Civ. 4429 (CHT).

United States District Court,
S. D. New York.

March 3, 1981.

Dennis M. Fox, White Plains, N. Y., for plaintiff.

Cohen, Weiss & Simon, New York City, for defendant I.B.T.; Eugene S. Friedman, Keith E. Secular, New York City, of counsel.

Leaf, Deull, Drogin & Kramer, P. C., New York City, for defendant Local 445, I.B.T.; David Kramer, Jeffrey C. Miller, New York City, of counsel.

## OPINION

TENNEY, District Judge.

On his motion for summary judgment, the plaintiff Robert Sanceverino is seeking

compensatory and punitive damages from his international and local unions, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Teamsters"), and its Local 445. Sanceverino alleges that he was wrongfully discharged under the terms of a collective bargaining agreement between his employer, McLean Trucking Company, and Local 445. The plaintiff was a truck driver for McLean from April 1977 until he was discharged on March 28, 1978, allegedly because of an excessive number of "missed clearances," relating to time off earned by truck drivers. The employer considered this a violation of a collective bargaining agreement signed on August 22, 1977 by McLean and Local 445. Affidavit of Robert Sanceverino, sworn to July 7, 1980 ("Sanceverino Aff."), ¶ 5 and Exh. C. Plaintiff claims, however, that he was fired in retaliation for filing 31 defective-equipment reports as required by federal transportation regulations. *Id.* ¶ 5.

By March 1978, Sanceverino was no longer represented by Local 445. As a result of a jurisdictional dispute finally resolved by the international union, the plaintiff contends that he was "forced . . . without [his] consent" to transfer to Local 707 which at that time and at the time of his discharge was not his legal bargaining representative. *Id.* ¶ 4. Nonetheless, without Sanceverino's urging, Local 707 made a request on or about April 3, 1978, for an arbitration hearing on the discharge. Apparently, the plaintiff decided to cooperate with Local 707, for he alleges that

> [d]espite my repeated requests, the attorneys appointed by Local 707 to represent me failed to consult with me until just 10 minutes prior to the hearing and failed to call any witnesses on my behalf who might establish the true nature of the discharge.

*Id.* ¶ 6. The arbitration award upheld the discharge in light of "the collective bargaining agreement dated August 22, 1977 between *Local 707* and McClean [sic] Trucking Corporation." Exh. E. to Sanceverino Aff. (emphasis supplied). This reference to Local 707 is undoubtedly just an inadver-

tent mistake; the arbitrator clearly applied and intended to refer to the agreement signed by Local 445.

In challenging the treatment he received, the plaintiff first brought an unfair labor practice charge against Local 707 for inadequate representation. In response, the National Labor Relations Board ("NLRB" or "Board") absolved the union because

> at no time was [Local 707] the lawful exclusive collective-bargaining representative of the unit of employees of which [Sanceverino was] a member. Thus, as the Union was neither obligated to nor authorized to process your claims, it was not subject to the duty of fair representation imposed by the Act upon exclusive collective-bargaining agents.

Letter from NLRB Regional Director Winifred D. Morio, dated June 30, 1978, Exh. G to Sanceverino Aff.; Letter from Ronald M. Slatkin, Acting Director, NLRB Office of Appeals, dated July 31, 1978, Exh. H. to Sanceverino Aff.

Next, Sanceverino came to federal court and sued his former employer, his former bargaining representative, and the international union. The substance of his charges against McLean has already been discussed. Against the unions, he alleged that they "conspired to breach, and have in fact, breached the statutory duty of fair representation owing to the plaintiff," Amended Complaint ¶ 16, "in forcing [him] to surrender [his] Local 445 membership and in compelling [him] to be represented by Local 707, which was neither obligated nor authorized to represent [him] in any way." Sanceverino Aff. ¶ 9. "Moreover, at no time prior to this transfer was [he] ever permitted to vote or otherwise be heard with respect to [his] wishes concerning this transfer." *Id.* ¶ 4.

On cross-motions for summary judgment, the unions argue that they have committed no wrongdoing and that the plaintiff has suffered no harm even if his transfer was improper. They state that the transfer was properly executed as an intra-union matter under the international union's constitution

which is legal under the federal labor laws, Affidavit of Elmore V. Schueler, sworn to October 7, 1980 ("Schueler Aff."), ¶¶ 5, 15; Local 445's Memorandum of Law at 6–7; that the international union owes no duty of fair representation to the members of local unions, Teamsters' Memorandum of Law at 6–10; that because it has no representational duty, the international union cannot be sued in federal court under 29 U.S.C. § 185, *id.* at 5–6; that Local 445 bore the plaintiff no further duty of fair representation after the forced transfer, Local 445's Memorandum of Law at 7–8; and finally, that Sanceverino did not seek assistance from Local 445, nor has he claimed that its assistance would have prevented his discharge, *id.* at 4, 6.

*Discussion*

 First, the Court must face the international union's jurisdictional objections. The Teamsters argue that they cannot properly be sued in federal court under section 301 of the Labor-Management Relations Act (the "Act"), which provides that "[s]uits for violation of contracts between an employer and a labor organization . . . , or between any such labor organizations, may be brought in any district court of the United States." 29 U.S.C. § 185(a). With regard to the August 22, 1977 agreement between Local 445 and McLean, they correctly state that "claims under Section 301 may not be asserted against parent labor organizations like the International based on collective bargaining agreements to which only a local union is a party." Teamsters' Memorandum of Law at 6. *See Teamsters Local 30 v. Helms Express, Inc.,* 591 F.2d 211, 216–17 (3d Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979). But this principle does not foreclose the possibility of a suit based upon the international's constitution as a contract. *Santos v. District Council of New York of United Bhd. of Carpenters and Joiners, AFL–CIO,* 547 F.2d 197, 199 n. 1 (2d Cir. 1977); *Drywall Tapers Local 1974 v. Operatives Plasterers' Int'l Ass'n,* 537 F.2d 669, 672–73 (2d Cir. 1976). Although these precedents dealt only with suits to enforce the provisions of the constitutions as written, there is no reason to deny union members a judicial forum for challenging the use of union constitutions in ways claimed to be violative of the federal labor laws. *Printing Specialities and Paper Prods. Dist. Council No. 2 v. International Printing and Graphic Communications Union,* 466 F.Supp. 13 (E.D.Tenn.1978). On the other hand, section 301 jurisdiction does not extend to intra-union disputes simply because those disputes are governed by (and perhaps resolved under) the international's constitution. *Cahill v. Metallic Lathers Local 46,* 473 F.Supp. 1326 (S.D.N.Y.1979). The plaintiff's claim—that his rights have been violated by his unwilling transfer to Local 707 pursuant to the Teamsters constitution—surely alleges more than a simple complaint about internal union affairs. Jurisdiction is therefore proper. But to decide whether his complaint is meritorious, the Court will now turn to the specific statutory provisions involved in this case.

 Section 7 of the Act protects a worker's right to organize with other workers or, if he so chooses, to refrain from organizing. 29 U.S.C. § 157. Section 8 makes it an unfair labor practice for a union to restrain or coerce a worker's exercise of section 7 rights, except that a union may "prescribe its own rules with respect to the acquisition or retention of membership therein." 29 U.S.C. § 158(b)(1)(A). *See NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 184–97, 87 S.Ct. 2001, 2008–16, 18 L.Ed.2d 1123 (1967). In other words, while section 8 protects a worker's right to freely choose a bargaining representative, it

leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule.

*Scofield v. NLRB,* 394 U.S. 423, 430, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385 (1969) (upholding union's imposition of fine on union member). Once an appropriately delineated unit of workers has chosen a bargaining

representative, that representative enjoys the right of exclusivity and bears the duty of representing all workers in the unit, whether union members or not, in a fair and reasonable manner. This duty applies to the initial negotiation of a collective bargaining agreement, *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–39, 73 S.Ct. 681, 685–87, 97 L.Ed. 1040 (1953), and to the subsequent enforcement of the contract for the employees' benefit. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967).

▮ In this case, the plaintiffs' claims are basically two-fold: first, that the international and Local 445 unlawfully "coerced" his choice of a bargaining representative by directing that Local 707 was the only affiliated Teamsters union empowered to accept his membership; and second, that because he was entitled to maintain his membership in Local 445, that local breached its duty of fair representation by failing to appear at his grievance hearing with McLean. Clearly, if the first claim fails, then the second fails with it, for if the transfer was lawful, then Local 445 owed no further duty of fair representation to Sanceverino. *Steele v. Louisville & Nashville R. R. Co.*, 323 U.S. 192, 204, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944) (duty is corollary of exclusive representation).

This case involves an unusual aspect of a jurisdictional dispute—or more accurately, the aftermath of a resolved jurisdictional dispute. Generally, these disagreements arise when two rival unions are competing for recognition or for control over some disputed work assignments, *e. g., NLRB v. New York Lithographers and Photoengravers' Union No. 1P, AFL–CIO*, 600 F.2d 336 (2d Cir. 1979), or when a local union refuses to accept the intended transfer of an affiliated union's workers, *e. g., Gavin v. Structural Iron Workers Local No. 1*, 553 F.2d 28 (7th Cir. 1977). Only rarely does a case arise in this posture, where the rival unions have resolved their differences and the new local is willing to accept the other local's workers, but the workers are still fighting the arrangement. Fortunately, however, this problem was recently addressed by the NLRB and the Ninth Circuit in a case substantially similar to this one. *Dycus v. NLRB*, 615 F.2d 820 (9th Cir. 1980). Although the plaintiff and defendants in this case disagree about the meaning of *Dycus*, this Court is satisfied that Sanceverino's transfer did not offend the federal labor laws and that it would be upheld by the NLRB.

From 1959 to 1975, Dycus performed a number of jobs in the toolroom of Grinnell Fire Protection Systems Company ("Grinnell"), which designs, manufacturers and installs fire protection equipment. From the start of his employment until 1974, he was represented by Teamsters Local 598, which in August 1973 negotiated a collective bargaining agreement with Grinnell covering Dycus's unit through April 1976. In the fall of 1974, Teamsters Local 986 requested that it be given jurisdiction over Grinnell because it was organizing firefighters, a related form of employment. The Teamsters' Joint Council approved the transfer, and "Local 598 agreed to the transfer without seeking the consent of the members affected by it." *Id.* at 823 (footnote omitted). Dycus was urged to join Local 986, but he declined to fill out an application and instead lodged several unsuccessful appeals with the parent union. Although Dycus subsequently directed Grinnell to send his union dues to Local 986 and sent the union a telegram asking whether they were still interested in representing him, the local turned him away because he had not filed an application and because he had also inquired about membership in an unrelated local. *Id.* at 823–24.

In March 1975, Grinnell fired Dycus after a downturn in business and a reorganization of the toolroom. Dycus challenged the discharge as a violation of the seniority provisions of the collective bargaining agreement negotiated by Local 598, and he sought assistance from both locals, which declined to help on the ground that they had disclaimed any interest in acting as his bargaining representative. *Id.* at 824.

Dycus never filed a grievance with Grinnell, but did bring unfair labor practice charges against the two locals for breaching their duty of fair representation and against the locals and the Joint Council for unlawfully attempting to coerce his transfer to Local 986. An administrative law judge found that Dycus could not complain about lack of representation when he never filed a grievance himself, but held that despite the legitimate reasons for the transfer, the labor organizations had violated Dycus's section 7 right to freely choose a bargaining representative. On review, the NLRB affirmed the first holding and reversed the second. *Teamsters Joint Council No. 42*, 235 N.L.R.B. No. 156 (1978).

Even though this case does not arise on review of an NLRB decision, the Board's views in *Dycus* deserve serious consideration and should carry great weight. As the Ninth Circuit commented in upholding the Board's conclusions, "[t]he function of striking the balance between the prohibitions of section 8(b)(1)(A) and the proviso [protecting internal rules] in a manner designed to effectuate national labor policy is one which Congress has committed primarily to the Board, subject to limited judicial review." *Dycus v. NLRB, supra*, 615 F.2d at 825. *See NLRB v. Iron Workers Local 103*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978); *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 235–37, 83 S.Ct. 1139, 1149–50, 10 L.Ed.2d 308 (1963). The NLRB's majority opinion in *Dycus*, quoted below, should therefore guide the resolution of the case at hand.

The "coercion" found by our dissenting colleague is rooted without explanation in an assumed duty of a collective-bargaining representative to continue representing a unit. That that is the basis for the dissenting view is easily demonstrated. Depriving the unit of the benefits of the collective-bargaining agreement by withdrawing as representative can be coercive as a matter of law only if the unit has a continuing right to those benefits. And if the unit has that right it can only be because a collective-bargaining representative has that duty. Without that duty, the proposition that Dycus was coerced by the incumbent's withdrawal evaporates: he would be no more coerced than any employee electing whether to be represented by a particular labor organization or not to be represented at all. Withdrawal is not a breach of the duty of fair representation. For that duty is the corollary to an exclusive representative's power and authority. The representative having disclaimed that power and authority, the predicate for the duty fails. Therefore, there was no coercion. Without that "coercion," the attempted transfer may be seen for what it is, an internal union matter.

235 N.L.R.B. at 1169 (footnote omitted).

In affirming the Board, the Ninth Circuit explained that "[a]n exclusive bargaining agent may avoid its statutory duty ... [only] by unequivocally and in good faith disclaiming further interest in representing the unit." *Dycus v. NLRB, supra*, 615 F.2d at 826. *See, e. g., Corrugated Asbestos Contractors, Inc. v. NLRB*, 458 F.2d 683, 686–87 (5th Cir. 1972); *IBEW and IBEW, Local 59 (Texlite, Inc.)*, 119 N.L.R.B. 1792, 1798–99 (1958), *enforced*, 266 F.2d 349 (5th Cir. 1959); *IBEW and IBEW, Local 58 (Steinmetz Elec. Contractors)*, 234 N.L.R.B. No. 106 (1978). But if the union does not make a valid disclaimer—for instance, if the disclaimer is inconsistent with union conduct, or if it is made for an improper purpose—the bargaining representative is not relieved of its statutory duty. *Dycus v. NLRB, supra*, 615 F.2d at 826.

Under the principles articulated by the Board and the Ninth Circuit, it is clear that Local 445 had disclaimed any further interest in representing Sanceverino by the time of his discharge as a driver for McLean. Even "without the consent of the members of the bargaining unit ... the transfer [ordered by the Teamsters' international] *in effect* constituted both a valid disclaimer by Local [445] of further interest in representation of [Sanceverino's] bargaining unit and a noncoercive offer by Local [707] to assume the role of representative." *Id.* at 825 (emphasis supplied). Indeed, Local 445

does not have to rely in this case on what was a disclaimer merely "in effect." When the secretary treasurer informed the local's members of the international's decision, he attached to his own letter a copy of a telegram from Frank E. Fitzsimmons, General President of the Teamsters, who made the following remarks:

THE FOLLOWING PROVISION OF ARTICLE XII, SECTION 12 OF THE INTERNATIONAL CONSTITUTION CONTROLS THE SITUATION AND DOES NOT REQUIRE THAT AN INDIVIDUAL MEMBER APPLY FOR A TRANSFER CARD:

"EVERY MEMBER OF A LOCAL UNION, AS A CONDITION OF BECOMING AND REMAINING A MEMBER, ACKNOWLEDGES THE RIGHT OF THE GENERAL EXECUTIVE BOARD, [IN] RESOLVING A JURISDICTIONAL DISPUTE, TO TRANSFER HIM FROM ONE LOCAL UNION TO ANOTHER."

ACCORDINGLY, IF A MEMBER REFUSES TO TRANSFER, LOCAL 445, [TO] BE IN COMPLIANCE WITH THE INTERNATIONAL CONSTITUTION AND THE GENERAL EXECUTIVE BOARD DECISION, MUST DISAVOW REPRESENTATION OF THE INDIVIDUAL MEMBERS AFFECTED BY THE JURISDICTIONAL DISPUTE DECISION.

Telegram of Frank E. Fitzsimmons, dated January 17, 1978, Exh. B to Sanceverino Aff. ("Fitzsimmons Telegram"). Since there is no claim that any of the unions violated the procedures set forth in the Teamsters' constitution for resolving jurisdictional disputes, see Sanceverino Aff. ¶ 13, and since there is no claim that the original transfer was for a discriminatory or illegitimate purpose, the Court finds that Local 445 owed Sanceverino no duty of representation at the time of his discharge.

This conclusion, however, does not answer the claim of coercion in his choice of a bargaining representative. The plaintiff is correct in stating that "whatever the provisions of [the Teamsters' constitution] ... no such provision can violate my rights un-

der the Federal labor laws." *Id.* But the mere fact of a disclaimer by one local and an offer of representation by an affiliated local does not constitute unlawful coercion. The letters received by the members of Local 445 did contain some strong language encouraging them to join Local 707. For instance, the secretary treasurer's letter concluded with the directive, "you are hereby notified that you must transfer from Local 445 to Local 707." Exh. A. to Sanceverino Aff. And the Teamsters' constitution, as quoted by President Frank Fitzsimmons, speaks of the international's "right ... to transfer [a member] from one local union to another." These lines certainly suggest a forcible transfer, rather than a quiet offer of representation by Local 707, but they are not illegal "in the absence of coercive *conduct* aimed at *compelling an employee* to accept the new representative." *Dycus v. NLRB, supra,* 615 F.2d at 826 (emphasis supplied). Surely Local 445 was compelled to effectuate the transfer because of its contractual obligations under the Teamsters' constitution. But the contractual bonds of a local union cannot be considered actionable "coercion" against an employee within the meaning of the statute. There is no allegation that Sanceverino was threatened with reprisals if he chose not to join Local 707, *see NLRB v. Independent Ass'n of Steel Fabricators,* 582 F.2d 135 (2d Cir. 1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979); nor was there any allegation that his employer or the international offered him any coercive benefits for making the switch, *see NLRB v. Pilgrim Foods, Inc.,* 591 F.2d 110 (1st Cir. 1978). Indeed, the only reprisal threatened for refusing to transfer was that Local 445 "must disavow representation of the individual members" who did not join Local 707—that is, a disclaimer. Fitzsimmons Telegram, supra. Nothing stopped the plaintiff from attempting to join an independent union, if it could obtain recognition, or from remaining a non-union member of the bargaining unit who would still enjoy the union's representation.

In *Dycus v. NLRB, supra,* the employee claimed that his bargaining unit was trans-

ferred to another local's jurisdiction because of his outspokenness in challenging the union and because of his intention to run for union office. *Id.* at 823, 825. Moreover, he was a member of a one- or two-person bargaining unit, *id.* at 823 n. 1, which would have been small enough to transfer for the specific purpose of silencing his dissidence. It was this suggestion of pointed discrimination, hiding behind a seemingly innocent jurisdictional dispute, that led to the one dissenting vote before the NLRB. See Joint Council of Teamsters No. 42, 235 N.L.R.B. at 1169–70 (Jenkins, Member of the Board, dissenting). At first blush, Sanceverino seems to be raising a similar point when he claims that his discharge was primarily because of his filing of defective-equipment reports. But even if this allegation were true, the unlawfulness was committed by the employer, not by the labor organizations involved here. Any contractual claims Sanceverino might have had were ended with the arbitration proceeding, where the arbitrator found just cause for his discharge. The mistaken reference in the arbitration award to McLean's agreement with Local 707, instead of Local 445, is immaterial. There is no doubt that the parties were discussing the terms of the agreement between McLean and Local 445. When Sanceverino challenged his discharge, he was entitled to present his claims on his own, and he would have enjoyed the right to appear on his own behalf even if one of the locals were his exclusive bargaining representative. Because the NLRB found that Local 707 had no duty of representation, see Exh. G to Sanceverino Aff., the Court is constrained to view its assistance at the grievance proceeding as a gratuitous act in the eyes of the law, even if its assistance was not zealous and thorough. But it was still Sanceverino's obligation to present any evidence and witnesses he had at the grievance proceedings.

In any case, the Court finds that Local 445 had no duty to represent him and that neither the local nor the international unlawfully coerced his transfer to Local 707. Summary judgment is therefore granted for the defendants and denied as to the plaintiff.

So ordered.