NEW ACTION COALITION, Marc Pessin, Anne Filardo, Paul Becker and David Weiner, suing individually, and Bruce Markens and Francisca Colon, suing on behalf of themselves and all others similarly situated, Plaintiffs,

v.

LOCAL 2 OF the UNITED FEDERATION OF TEACHERS, Albert Shanker, as President of Local 2; The Local 2 Election Committee; Ray Frankel, as Chairperson of the Local 2 Election Committee; Edward Muir, individually and as Head of the Local 2 Safety Committee; William Sigelakis, individually and as Head of the Local 2 Association of Teachers of Social Studies; and the American Arbitration Association, as Agent of Local 2 and its Election Committee, Defendants.

No. 81 CIV 2120 (MP).

United States District Court,
S. D. New York.

April 16, 1981.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman by Victor Rabinowitz, Jules Lobel, Emily Bass, New York City, for plaintiffs.

Vladeck, Elias, Vladeck & Engelhard by Sheldon Engelhard, New York City, for defendants, except AAA.

Michael Hoellering, New York City, for American Arbitration Association.

## OPINION AND FINDINGS

MILTON POLLACK, District Judge.

The plaintiffs have applied for preliminary injunctive relief in this suit, pursuant to Rule 65, Fed.R.Civ.P. in a Union election dispute. It appearing that plaintiffs have failed to establish facts indicating probable success on the merits and possible irreparable injury and that there is little factual support for serious questions going to the merits or even a balance of hardships tipping decidedly toward the plaintiffs on this application, preliminary injunctive relief will be denied. The facts follow.

This suit is one for declaratory and injunctive relief arising under Sections 101 and 401(c) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411 and 481(c). The complaint also asserts common law pendent claims. Jurisdiction over the federal causes of action is posited under 29 U.S.C. § 412. The plaintiffs are members of Local 2 of the United Federation of Teachers ("UFT") and sue on behalf of themselves and all others similarly situated. The parent organization of Local 2 is the American Federation of Teachers AFL–CIO.

The Local is comprised of four divisions and one residual unit. They may be charac-terized as follows: the Elementary School Division, the Junior High and Intermediate School Division, the Vocational High School Division, the Academic High School Division ("the ACAHS Division") and the Functional Unit.

The UFT is the collective bargaining agent for approximately 50,000 teachers in New York City public and private schools and conducts elections for officers and members of the Executive Board every two years; their terms begin on July 1st following their election.

Article V, Section 7 of the UFT Constitution provides that "[t]he Executive Board shall supervise all elections in the manner provided for by the Constitution and shall decide all disputes arising out of such elections." The Executive Board has delegated at least some of its authority to a committee: the Election Committee. All three of the present members of the Election Committee were appointed by the Executive Board. The UFT Constitution does not require that the Election Committee be constituted in any particular way.

The UFT is presently in the process of conducting its biennial election of officers representing the different Divisions and Executive Board members as well as delegates to the American Federation of Teachers conventions. The election is being conducted by slate balloting. Members of the Union can vote either for a long list of individual candidates or simply vote for a slate of candidates. Traditionally the overwhelming percentage of members vote by slate. This year there are two slates running in the pending election. The incumbent Union leadership traditionally runs a slate under the name of the "Unity Caucus Slate." Plaintiffs organized an opposition slate in the current election under the name of the "New Action coalition".

Prior to the inception of this lawsuit and the present application for a preliminary injunction, the 1981 election proceedings had reached the stage where the rival slates had been nominated, publicized campaign materials had been circulated by both parties and their candidates, ballots and en-

velopes to be used in the election had been approved by the Election Committee, the AAA ("American Arbitration Association") had been employed to administer the election pursuant to the AAA Election Rules and to act as agent for the UFT in such administration, the procedures of the AAA had been announced and clarified to the representatives of the NAC, the master list used for the mailing was made available for inspection by NAC with the approval of the UFT Ballot Committee, and 75,688 ballots had been mailed and distributed to UFT members on March 24, 1981 by the AAA. This distribution was made in different colors for each of the four Divisions and the Functional Unit. All ballots were required to be returned to the AAA by 8 A.M. April 10, 1981. Counting of the ballots began at 9 A.M. on April 10, 1981 and has since been substantially completed except for questions to be answered by the Arbitrator. However, announcement of the results of the count and resolution of the remaining questions were temporarily stayed by the Court, as indicated hereafter.

Plaintiffs commenced this suit by the filing of their complaint shortly after 4 P.M. on April 8, 1981 and thereupon applied for a temporary restraining order against completion of the election in progress, including the tally of the ballots. The application for a TRO was made *ex parte* and at 5:15 P.M. the Court made the application for a TRO returnable at 10 A.M. on April 10, 1981 with requirement of service of notice thereof on defendants by noon time of April 9, 1981.

On April 10, 1981 at 10 o'clock in the forenoon the Court heard counsel on an application for the temporary restraining order sought and after hearing counsel, the Court permitted the AAA's administration of the electoral process to proceed without restraint but directed the AAA to refrain from officially or unofficially completing and announcing the result of any tally of the acceptable ballots or resolution of controverted ballots until further order of the Court. The application for a preliminary injunction was set down for hearing to commence at 11:15 A.M. on April 13, 1981. The AAA processed all ballots that had been delivered by the Post Office to the AAA in the presence of observers of both sides of this controversy except questionable ballots which were put to one side to be taken up with the designated Arbitrator.

The plaintiffs here contend that there has been a discriminatory use of Union lists by defendants in violation of Section 401(c) of the LMRDA, 29 U.S.C. § 481(c) entitling plaintiffs to enjoin and void the election. They contend that since the personnel of the Election Committee named by the Union's Executive Committee happened to be candidates of only one slate in this election, that set-up violates Title I, Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). They say further that the Election Committee and the AAA failed to insure that each member of the Union who cast a ballot had their vote counted. In consequence the plaintiffs, contend that they are entitled to injunctive relief on traditional grounds for the issuance of a preliminary injunction.

The defendants on the other hand contend that the Court does not have jurisdiction over the asserted violations of the LMRDA because this application was made after the election was already in progress; that there was no pre-election discrimination against the the NAC as alleged in respect to the availability of any lists of voters used by defendants; that the NAC had in fact reached every voter in the ACAHS Division by a succession of four or five separate leaflets that had been distributed serially to *all* members of the High School Division, commencing early in March through the first week of April 1981, as well as by the publication and transmission within a few days before the balloting of the UFT publication *New York Teacher*, mailed to every eligible voter on March 20, 1981, espousing NAC's points of view on the issues. The defendants assert that the sole remedy with respect to the plaintiffs' contentions is vested by Title IV of the statute in the Secretary of Labor 29 U.S.C. § 481 *et seq.*

Apart from their jurisdictional challenge, the defendants assert that the Election

Committee, as constituted, does not violate Title I of LMRDA, 29 U.S.C. § 411 *et seq.*; that it is premature to allege that the Election Committee and the AAA have failed to insure that votes cast by members will not be counted; and that plaintiffs do not and cannot meet the standards to justify issuance of preliminary injunctive relief.

The issues thus raised have been tried at a Bench trial at which the witnesses were heard and their credibility appraised and documentary evidence was adduced.

## THE APPLICABLE LAW

The provisions of the LMRDA have two distinct branches for relief of conduct violative of the election process.

Title I, Section 101(a)(1), 29 U.S.C. § 411(a)(1) guarantees that:

[e]very member of a labor organization shall have equal rights and privileges ... to nominate candidates, to vote in elections or referendums of the labor organization ... and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by-laws.

In *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964) the Supreme Court construed Section 101(a)(1) as "no more than a command that members and classes of members shall not be *discriminated against* in their right to nominate and vote." 370 U.S., at 139, 85 S.Ct. at 295–296 (emphasis added). The Supreme Court held that a federal district court had no jurisdiction over a suit brought by Union members under Sections 101(a)(1) and 102, 29 U.S.C. §§ 411 and 412, challenging the Union's eligibility qualifications for candidacy, on the ground that there was no discrimination against the complaining Union members. *Id.,* at 139, 85 S.Ct. at 295–296; *See also Gurton v. Arons,* 339 F.2d 371 (2d Cir. 1964); *Schonfeld v. Penza,* 477 F.2d 899, 902–03 (2d Cir. 1973). "[T]he provisions of the LMRDA were not intended to constitute an open invitation to the courts to intervene [at the instance of Union members] in the internal affairs of a union."

*Sheldon v. O'Callaghan,* 497 F.2d 1276, 1281 (2d Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974).

Title IV, Section 401, of the LMRDA, 29 U.S.C. § 481 governs the election of Union officers. It provides in pertinent part:

Every national or international labor organization ... shall be under a duty enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States ... to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members. . . . (§ 401(c)).

Nevertheless, while a federal district court has jurisdiction to hear claims for the relief described by Section 401(c) when the claims are brought before the election, the Secretary of Labor has exclusive jurisdiction under Title IV, 29 U.S.C. §§ 482 and 483 over claims brought after the election. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 531, 92 S.Ct. 630, 632–633, 30 L.Ed.2d 686 (1972); *Calhoon v. Harvey, supra,* 379 U.S. at 140, 85 S.Ct. at 296; *Schonfeld v. Penza, supra,* at 902. An election is deemed to have occurred once the balloting has occurred. Where balloting has occurred before plaintiffs file their complaint and apply for injunctive relief, the Court lacks jurisdiction to hear claims under section 401(c) pertaining to the election. *McDonough v. Local 825, International Union of Operating Engineers,* 470 F.2d 261, 264 (3d Cir. 1972); *cf., Calhoon v. Harvey, supra,* 379 U.S. at 146 n.7, 85 S.Ct. at 299 n.7 (Stewart, J., concurring). In *McDonough* the Court said:

Where an election has already been conducted, § 482 is the exclusive remedy available. 29 U.S.C. § 483. . . .

\*   \*   \*   \*   \*   \*

It is a reasonable interpretation of § 483 to hold that an election has been conducted once balloting has occurred. 470 F.2d at 464.

## THE FACTUAL CONTENTIONS

■ The plaintiffs have complained of certain categories of alleged violations of the LMRDA. They say:

1. Teachers in the ACAHS Division were denied their right to vote.
2. Discriminatory use was made of information in the Union's files relating to segments of eligible voters in the ACAHS Division.
3. Observers during the count by AAA were not permitted to function as such.
4. The make-up of the Election Committee violated the LMRDA.
5. The plaintiffs were denied access to the voter list.

These complaints will be treated seriatim herein.

*1. Eligible voters and their right to vote*

The Court finds that there is no factual basis in this record to warrant a valid claim that the UFT Election Committee or the AAA deprived any eligible member of the Union the right or opportunity to vote in the election.

The plaintiffs' contention that voters were denied their right to vote relates solely to the ACAHS Division. On March 24, 1981 the AAA mailed 10,995 ballots, one to each member of the ACAHS Division. The ballots to be mailed were all intended to be buff in color. Each was accompanied by a pre-numbered buff envelope addressed, postpaid to the AAA; the number on the envelope corresponded with the number assigned to the recipient voter on the master voting list.

On March 25, 1981, the AAA learned that an error had been made in the mailing of between 1,929 and 2,413 of the 10,995 ballots sent to eligible voters in the ACAHS Division. The error consisted of enclosing a blue ballot intended for the Functional Di-

vision voters instead of a buff ballot intended for ACAHS Division voters.

On March 26, 1981 the AAA mailed duplicate ballots, color-coded buff with return envelopes, to the entire ACAHS Division; that is, an additional 10,995 ballots. Accompanying each duplicate mailing was a clearly worded notice, in large printed type, unmistakably reading:

Dear Voter:

We know you have received a ballot. However unless that ballot was the ACADEMIC HIGH SCHOOL DIVISION BALLOT (buff in color), you have received the wrong ballot.

Please vote the enclosed correct ballot and return immediately in the envelope provided.

VOTE THIS BALLOT

THIS IS THE CORRECT BALLOT.

The return envelopes for the return of the duplicate ballots contained the following inscription: *OFFICIAL U.F.T. BALLOT—DUP.* All envelopes contained a space for the name, street, city, file number, social security number and signature of the person purportedly voting in the election. On the envelope was the identification number assigned to it by the AAA corresponding to the voter's number on the Master List. The numbers on the return envelopes for the initial and duplicate ballots were identical.

Every eligible member of the ACAHS Division was thus accorded his/her right to vote and none was disenfranchised. The handling of disputed ballots by the AAA is an incident of the election itself to be completed with observers participating at the AAA and before the Arbitrator. That does not constitute a basis for jurisdiction of this Court of any dispute thereon and is a matter for the consideration, if at all, by the Secretary of Labor and action by him if warranted.

*2. Discriminatory use of information in the files*

There is no credible proof in this record that discriminatory use was made by de-

fendants of lists of voters in the ACAHS Division.

Defendant Edward Muir is the Chairman of the Local's Safety Committee and a candidate at-large member of the Executive Board on the Unity Caucus slate. As Chairman he has in his office files of reports sent in concerning safety incidents involving accidents and incidents to students or teachers in the High Schools. There is no physical list of those involved. The Safety Committee does not maintain a list of persons who have filed accident or incident reports with it. The files are open, unlocked, and available to anyone who might have an interest in examining them and are frequently used by members of the press to call public attention to occurrences involving safety in the schools.

None of the plaintiffs, nor the NAC, requested of the UFT's Safety Committee, or of its chairman, Edward Muir, that these files or reports be made available for any purpose.

In connection with the election, defendant Muir prepared the text of a letter dated March 19, 1981, not on the letterhead of the UFT or any Committee thereof, which was furnished to George Altomere, a candidate for Vice-President of the ACAHS Division urging the recipient to vote for Altomare and the entire Unity Caucus slate. The letter stated that Muir can assure the recipient that Altomare and the current UFT leadership consider school safety to be a priority item and that a vote as indicated above is a vote for safer schools. This same theme was broadcast to the entire UFT membership in the UFT paper issued March 20, 1981, the next day, publishing Altomare's picture setting up the rival claims of the two slates. The Unity Caucus group trumpeted therein "Too many of our schools are unsafe—for staff and students alike." "We've turned around unsafe schools" "Be Sure To Vote—And Vote Unity." The NAC propaganda was published in the same issue under the head of "Some myths debunked" and "Let's get our priorities straight" and "How a New Action Coalition—led UFT would be different."

There is no evidence in the record that the Muir letter was in fact sent out—or when—or to whom. There is no evidence of a list to whom it could be sent. There is no evidence that the same access to the safety reports was not available to the plaintiffs on request nor did they make any request for access thereto. In short, there was no electoral discrimination established by the plaintiffs.

Another letter or flyer also beseeching support for Altomare and Unity is also complained of as discrimination in the election process. Substantially the same inadequacy of proofs pertaining to the Muir letter is applicable to the so-called Sigelakis missive headed "Association of Teachers of Social Studies."

Sigelakis is President of the Local 2 Association of Teachers of Social Studies and himself a candidate on the Unity Caucus slate for Delegate to the Conventions of the teachers. The name of Local 2 and the UFT do not appear on the letterhead.

Again as in the case of the Muir letter, the evidence is deficient; there is no list that was used by him or made available to others according to Sigelakis; there was no proof of what was done with the endorsement or the extent, if any, to which it was used. Nor is there any proof that access was requested or denied to anyone seeking to follow up on the trail of the letter. In short, there was no discrimination established by the plaintiffs on this score.

### 3. Observers not permitted to function

The testimony of one of the observers of the administration of the count by the AAA falls far short of any certified grievance. They were asked not to audibly interfere with the labors of the AAA workers by talking to each other at the counting tables. They did not furnish any input to the Arbitrator in his consideration of the validity of certain of the ballots, but this is not a matter that has been finally passed upon nor does it appear that the Arbitrator will be shielded on the final determinations he may be requested to make from hearing the

observers. The evidence does not sustain any claim of deprivation of a valid opportunity to observe. Indeed, no notation was made by the observor of any matter on which their function was improperly constricted or on which a complaint could be registered or on which he had a grievance to be aired. He was intent apparently only on mathematical results.

### 4. The make-up of the Election Committee

All three members of the Election Committee were appointed by the Executive Board of the UFT.

The LMRDA does not require that the Election Committee include persons from all slates. There is nothing in the Constitution or By-Laws of the UFT that dictates that the composition of an Election Committee should be drawn from sectors of the electorate or be constituted in any particular way. During the past 19 years, the Election Committee has always, according to the affidavit on file, consisted of Executive Board members who quite obviously must seek reelection as do all other elected officials.

There is no allegation that members of the Election Committee interfered with the nomination of or the voting for candidates.

### 5. Access to the Master List of the membership

There is no credible factual basis for the suggestion that the plaintiffs were denied access to, inspection of or the legitimate use of the master list. Indeed, the list was made available by the AAA to the NAC representatives within one or two days of the actual request therefor. Defendants did not discriminatorily deprive plaintiffs of requested opportunities to examine the lists of the UFT membership, including the ACAHS Division membership, who were eligible to vote in this election.

### CONCLUSIONS

The Court finds that no sufficient basis for preliminary injunctive relief has been presented and the same is in all respects denied.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) Fed.R.Civ.P.

SO ORDERED.