**Timothy A. BROWN, James Hopkins, Paul Nielsen, Arthur Holdeman, David Edwards and John Hayes, Plaintiffs,**

v.

**AMERICAN ARBITRATION ASSOCIATION and International Organization of Masters, Mates & Pilots, AFL–CIO, Defendants.**

No. 89 Civ. 0567 (PKL).

United States District Court, S.D. New York.

July 11, 1989.

Ernest Allen Cohen, Tucson, Ariz., for plaintiffs.

Edwin A. Steinberg, P.C. and American Arbitration Ass'n, New York City, for defendants; Rosemary S. Page, of counsel.

## ORDER AND OPINION

LEISURE, District Judge:

Plaintiffs commenced this action in the Supreme Court, New York County, on or about January 5, 1989, against the American Arbitration Association (the "AAA"). Simultaneously, plaintiffs moved for a temporary restraining order and an order to show cause for a preliminary injunction barring the AAA from counting the ballots in the 1988 quadrennial election of the International Organization of Masters, Mates & Pilots ("IOMM & P") (the "1988 Election"), and requesting appointment of an election arbitrator to determine all challenges to the balloting procedure. The temporary restraining order was denied but the order to show cause for a preliminary injunction was granted.

On or about January 18, 1989, plaintiffs filed an amended complaint in the state court naming IOMM & P as an additional defendant. A supplemental order to show

cause was issued returnable on January 26, 1989. On January 25, 1989, the action was removed to this Court.

## FACTUAL BACKGROUND

IOMM & P is a labor organization whose members consist primarily of licensed deck officers serving aboard United States flag merchant vessels. IOMM & P's headquarters office is located in Linthicum Heights, Maryland. The internal affairs of the organization are governed by its International Constitution. *See* IOMM & P Memorandum in Support, Exhibit 1 (the "Union Constitution").

Plaintiffs are members of the IOMM & P and were candidates for office in the 1988 Election. The Constitution provides for a ninety day mail ballot, which for the election at issue was between October 1, 1988 and December 30, 1988. *See* AAA Notice of Motion, Exhibit B; Union Constitution, Article V, § 9(f). Section 3(f) of Article V of the Union Constitution provides that the election shall be conducted by an Impartial Balloting Agency selected by a majority *pro rata* vote of the International Convention. The Impartial Balloting Agency prepares and mails the official ballots under the supervision of the International Ballot Committee ("IBC"). *See* Union Constitution, Article V, § 9(d). Election challenges may be made, pursuant to Article V, § 9(i), in the following manner:

> Challenges to the election may be made to the International Ballot Committee at the time of the counting of the ballot by the candidate or his representative observer who shall possess certification of same from the candidate he represents. Appeals from rulings of the Ballot Committee shall be taken to the General Executive Board and then to the Convention. Challenges to the election may also be made to the General Executive Board, in writing, within 30 days from the date of completion of the counting of the ballot. An appeal from the ruling of the General Executive Board may be taken to the Convention.

The Convention was held from August 22, 1988 to August 25, 1988, and the AAA was selected by the delegates to act as the Impartial Balloting Agency. The Convention also elected the members of the IBC.

An agreement was entered into between the AAA and IOMM & P which authorized the AAA "to conduct said election in conformity with the International Constitution of the [IOMM & P] pursuant to the AAA Election Rules...." Affidavit of Ernest Allen Cohen, Esq., sworn to on April 14, 1989 ("Cohen Affidavit"), Exhibit B at 1. AAA Election Rule 8 provides that an "election arbitrator shall rule on all challenged ballots and on any other objection to the election...." Cohen Affidavit, Exhibit C.

Subsequent to the close of the Convention, the IBC was convened and during the course of the balloting election challenges were received from members and candidates, including plaintiffs Timothy A. Brown ("Brown"), James Hopkins and John Hayes. The IBC notified the members that the ballots were to be counted on January 5, 1989, in Washington D.C., and that on January 4, 1989, it would meet to act on all challenges to the election process.

During the balloting period, plaintiff Timothy A. Brown ("Brown") sought appointment of an election arbitrator by the AAA to decide election challenges. The AAA declined plaintiff's request. At the IBC meeting on January 4, 1989, Brown directed his request for appointment of an election arbitrator to the IBC. The IBC denied this request and thereupon ruled on all election challenges.

On January 5, 1989, the ballots were counted by the AAA in the presence of the IBC, candidates and other observers and at that time the unofficial results were announced. On January 7, 1989, the AAA issued its preliminary certification of the election results which included the outcome for all elective offices, except the Offshore Membership Group convention delegates and alternate delegates. The final certification was issued by the AAA on January 11, 1989.

On February 3, 1989, plaintiffs submitted challenges from the IBC's decision to the IOMM & P's General Executive Board. On

February 22, 1989, the General Executive Board notified each of the plaintiffs that their challenges were denied.

This action is currently before the Court on defendants' motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12, for lack of subject matter jurisdiction, improper venue, and failure to state a claim.

## DISCUSSION

1. Subject Matter Jurisdiction

This action was removed from Supreme Court, New York County, on the basis of federal question jurisdiction. Defendants, however, now contend that this Court lacks subject matter jurisdiction and that as a result this action should be dismissed. Plaintiffs, in response, have asserted numerous grounds supporting the subject matter jurisdiction of this Court. Alternatively, plaintiffs contend that if this Court lacks subject matter jurisdiction the appropriate action would be a remand to the state court. Despite the parties confused presentation of the issues, the Court is under the obligation to ensure that it possesses subject matter jurisdiction before proceeding with this action.

Under the "well-pleaded complaint" rule, the existence of federal question jurisdiction must be determined solely on the basis of plaintiffs' complaint, without regard to the anticipated defenses that a defendant may thereafter interpose. *See, e.g., Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914); *West 14th Street Commercial Corp. v. 5 West 14th Street Owners, Corp.,* 815 F.2d 188, 192 (2d Cir.), *cert. denied,* 484 U.S. 871, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987).

█ The parties have cited various federal statutes, none of which appear on the face of the complaint, in an effort to support this Court's jurisdiction. However, the parties misconstrue the nature of federal question jurisdiction. It is not sufficient to merely point to some federal statute which by its terms might apply to the instant litigation. Rather, the existence of federal question jurisdiction must be determined on the basis of plaintiffs' complaint.

█ It is clear that no federal question appears on the face of plaintiffs' complaint, which solely alleges violations of the Union Constitution. *See, e.g., Deats v. Joseph Swantak, Inc.,* 619 F.Supp. 973 (N.D.N.Y. 1985) (since plaintiff is master of his complaint he is entitled to decide upon what law he will rely; if he decides not to invoke federal right his claim belongs in state court); *cf. Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989) (where there is no independent basis for federal jurisdiction over the party against whom only a state claim is asserted at the inception of the action, there is no pendent jurisdiction, even where the state claim is closely related to the federal claim). Neither defendants' contention that removal is proper under § 301 of the Labor Management Relations Act, nor plaintiffs' assertion that the Federal Arbitration Act provides jurisdiction is meritorious. As shown below, not only is there no reference to these statutes and rights on the face of the complaint, but by their own terms the statutes are inapplicable.

A. *The Labor Management Relations Act*

█ Defendants based the removal of this action on Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), Title 29 U.S.C. § 185(a). Section 301 of the LMRA provides for federal court jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...."

A breach of a union constitution is cognizable under § 301 of the LMRA, *see United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), and such action may encompass suits by a union member against a labor organization. *See National Ass'n of Basketball Referees v. Middleton,* 688 F.Supp. 131 (S.D.N.Y.1988). However, not all provisions of a union's constitution may be enforced by suit under § 301(a). Jurisdiction under § 301 to enforce a union constitution does not extend

to merely intra-union disputes; the dispute must relate to a collective bargaining agreement. *Cahill v. Metallic Lathers Union Local No. 46*, 473 F.Supp. 1326 (S.D.N.Y.1979); *see also United Brotherhood of Carpenters and Joiners of America v. Albany*, 553 F.Supp. 55, 59 (N.D.N.Y.1982); *Sanceverino v. Union Local 445*, 510 F.Supp. 590 (S.D.N.Y.1981) ("[S]ection 301 jurisdiction does not extend to intra-union disputes simply because those disputes are governed by (and perhaps resolved under) the international's constitution."); *cf. Hernandez v. Wall*, 696 F.Supp. 52 (S.D.N.Y.1988).

The present controversy is no more than an internal union dispute. There is no mention in the record of a collective bargaining agreement. Accordingly, the subject matter jurisdiction of this Court cannot be based on § 301(a) of the LMRA.

### B. *The Federal Arbitration Act*

■ On the other hand, plaintiffs contend that this Court has subject matter jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. Section 4 provides, in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court *which save for such agreement, would have jurisdiction under Title 28*, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties....

9 U.S.C. § 4 (emphasis added).

This section expressly requires that petitions to compel arbitration allege independent grounds of jurisdiction. *See, e.g., Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 181 F.Supp. 130 (S.D.N.Y.1960), *aff'd*, 287 F.2d 382 (2d Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *International Asso. of Machin-*

*ists v. General Electric Co.*, 211 F.Supp. 654 (N.D.N.Y.1959). Accordingly, the Federal Arbitration Act cannot confer subject matter jurisdiction on this Court.

### C. *The Labor–Management Reporting and Disclosure Act*

■ However, the courts have created an exception to the well-pleaded complaint rule where the area of state law is one which has been completely preempted by federal law. *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In other words, any claim purportedly based upon preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Id.* In the present case, the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA") completely preempts plaintiffs' breach of contract action, and therefore this case falls within the above described exception to the well-pleaded complaint rule.

Title IV of the LMRDA covers the conduct of union elections. Section 482 defines the procedure which is to be followed by a member of a labor organization who challenges an election which has already been held.[1] Section 483 concludes with the sentence, "The remedy provided by this title for challenging an election already conducted shall be exclusive." It would seem clear from the terms of Title IV that its aim was to prescribe a procedure which would channel all matters which might tend to undo labor union election results into one agency of government which, in the judgment of Congress, was best equipped initially to settle them. Extrinsic evidence of the purpose of the legislation is found in a statement by one of its chief sponsors, Senator John F. Kennedy, who said,

In the case of elections we preempt action for the Federal Government after

---

1. An election is "already conducted" within the meaning of § 483 once balloting has occurred. *See, e.g., New Action Coalition v. Local 2 of the United Federation of Teachers*, 510 F.Supp. 1208 (S.D.N.Y.1981). In the present case, balloting was conducted by mail between October 1, 1988 and December 30, 1988. This action was commenced on or about January 5, 1989. Accordingly, this action involves an "already conducted" election within the meaning of the LMRDA. *See, infra* at 201.

the election is held. A suit may be filed in a State court prior to an election. The Federal Government takes preemption after an election. We have attempted to exercise Federal rights in those areas where the Federal Government can best do the job, and have attempted to provide for State preemption in the areas where the State can do it best.... Prior to the day of an election an individual can sue in a State. The day after an election the Secretary of Labor assumes jurisdiction.

105 Cong.Rec. 6485 (1959).

This view of the purpose of the legislation is confirmed by the fact that all attempts to preserve in the act remedies which theretofore were available under state law after the holding of elections were defeated. *See* Sen.Rep. No. 187, 86th Cong., 1st Sess., U.S.Code Cong. & Admin. News 1959, p. 2318.

Section 203, 29 U.S.C. § 483, of the bill specifically preserves rights and remedies which union members have under existing law to insure compliance with provisions of a union's constitution and bylaws relating to elections *prior* to the conduct of an election. However, since the bill provides an effective and expeditious remedy for overthrowing an improperly held election and holding a new election, the Federal remedy is made the *sole* remedy and private litigation would be precluded.

U.S.Code Cong. & Admin.News 1959 (86th Cong. 1st Sess.) p. 2338 (emphasis added).

After enactment of the LMRDA attempts were made to find a private post-election remedy in Title I of the Act, which enumerates certain rights of union members. When *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), reached the Supreme Court it rejected the contention that Title I of the Act afforded a private post-election remedy. The Court stated:

Section 402, 29 U.S.C. § 482 of Title IV the election provisions of the Act ... sets up an *exclusive method* for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of

Title IV.... It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest.... In so doing, Congress, with one exception not here relevant, involving pre-election grievances decided not to permit individuals to block or delay union elections by filing federal-court suits for violation of Title IV.

*Calhoon, supra,* 379 U.S. at 140, 85 S.Ct. at 296 (emphasis added). "It is clear since *Calhoon v. Harvey* that the only post election remedy, state or federal, is a suit by the Secretary against the Union under § [482] of the Act." *Hodgson v. Carpenters Resilient Flooring Local Union No. 2212,* 457 F.2d 1364 (3d Cir.1972).

It is quite clear that Congress intended by § 483 to make the § 482 remedy of a suit by the Secretary the exclusive post-election remedy, and thus to completely preempt remedies under state law. *See Hodgson, supra; MacDonald v. Carr,* 355 Mass. 120, 243 N.E.2d 808 (1969) (remedy provided by §§ 481–483 for challenging election already conducted is exclusive and state courts are deprived of jurisdiction of such actions); *McBride v. Rockefeller Family Fund,* 612 F.2d 34, 35 (2d Cir.1979) (New York courts refrain from adjudicating post-election disputes); *Arnold v. District Council No. 9, International Brotherhood of Painters and Allied Trades,* 61 A.D.2d 748, 401 N.Y.S.2d 811 (1st Dept. 1978).

Nevertheless, plaintiffs urge that the state court has jurisdiction over this matter pursuant to N.Y. C.P.L.R. ("CPLR") § 7501 (McKinney 1980) (agreements to arbitrate confer jurisdiction on state courts). As discussed, *infra,* plaintiffs' claims fall squarely within LMRDA § 482 *et seq.,* and, as such are completely preempted by federal law. Plaintiffs' attempt to characterize their claim as one merely for breach of contract and their failure to cite the LMRDA in their complaint are not dispositive.

In sum, plaintiffs' claim is purportedly based upon preempted state law and therefore is considered, from its inception, a

federal claim, arising under federal law. The LMRDA completely preempts plaintiffs' breach of contract action, and accordingly this case falls within the above described exception to the well-pleaded complaint rule, conferring subject matter jurisdiction on this Court.

## 2. Failure to State a Claim

■ Defendants have moved, pursuant to Fed.R.Civ.P. 12, to dismiss the complaint for failure to state a claim. Specifically, defendants contend that a suit challenging an election that has already been conducted may only be brought by the Secretary of Labor. Once again, plaintiffs seek to avoid the impact of the LMRDA by asserting that this action is merely one for breach of contract.

Defendants assert that this action, which seeks to challenge the validity of a union election, is encompassed by the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 481–483. Defendants assert that the election at issue is one that has been "already conducted" under the terms of the LMRDA and, therefore, exclusive jurisdiction rests with the Secretary of Labor. Plaintiffs respond by asserting that the present action does not seek to invalidate an already conducted union election, but, rather, to enforce the union constitution. Additionally, plaintiffs argue that they are merely attempting to exhaust their internal union remedies as required by § 482.

Under the provisions of Title IV of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 481–483, after an election has been completed, the authority to investigate alleged election violations lies exclusively with the Department of Labor. Section 482 provides, in relevant part:

The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States ... to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary....

Section 482 sets forth the procedures to be followed where a member of a labor organization seeks to challenge the validity of an election. These procedures include exhaustion of internal remedies under the organization's constitution and the filing of a complaint with the Secretary of Labor within the prescribed time period. Section 482(b) provides that the Secretary of Labor shall then conduct an investigation to determine if probable cause exists to bring a civil action against the organization.

A union member's exclusive remedy to challenge a union election which has already been conducted is the filing of a complaint with the Secretary of Labor under 29 U.S.C. § 483. *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); *see also Furniture Moving Drivers v. Crowley*, 467 U.S. 526, 540, 104 S.Ct. 2557, 2565, 81 L.Ed.2d 457 (1984) ("[r]elying on [§ 483], and on the comprehensive nature of the enforcement scheme established by § 482, we have held that Title IV sets up an exclusive method for protecting Title IV rights"); *Perreault v. Local 509*, 823 F.2d 35 (2d Cir.1987); *Coleman v. Brotherhood of R. & S.S. Clerks*, 228 F.Supp. 276 (S.D.N.Y.1964), *aff'd*, 340 F.2d 206 (2d Cir.1965); *Fanning v. United Scenic Artists*, 265 F.Supp. 523 (S.D.N.Y. 1966).

An election is "already conducted" within the meaning of § 483 once balloting has occurred, even though the ballots have not been counted. *See New Action Coalition v. Local 2 of the United Federation of Teachers*, 510 F.Supp. 1208 (S.D.N.Y.1981); *Laski v. International Organization of Masters*, 502 F.Supp. 134 (S.D.N.Y.1980); *see also McDonough v. International Union of Operating Engineers*, 470 F.2d 261 (3d Cir.1972).

In the present case, the amended complaint alleges several improprieties in the election process and seeks appointment of an election arbitrator to resolve the issues raised by plaintiffs. The election occurred

between October 1, 1988 and December 30, 1988, and the ballots were counted on January 5, 1989. The action against the AAA was commenced, in state court, on or about January 4, 1989, and an amended complaint naming IOMM & P as a defendant was filed on or about January 17, 1989. As both complaints were filed after the balloting occurred, the present action involves an "already conducted" election under the LMRDA.

Moreover, plaintiffs' claim that this is a simple breach of contract action is without merit. This is an action challenging a union election. Specifically, plaintiffs challenge: (1) the failure to segregate challenged ballots; (2) the eligibility of certain voters; (3) nominating procedures; and (4) the validity of certain ballots. Plaintiffs' request for relief is that the "AAA be ordered to forthwith schedule an arbitration before an Election Arbitrator pursuant to Election Rule 8 who will rule on challenges and objections in the union election...." Amended Complaint at 13. Simply denominating their claim as one either to enforce the union constitution or to enforce the arbitration agreement is not dispositive. The gravamen of the complaint is to test the validity of a union election; and, accordingly, plaintiffs' rights are specified in § 481 and the exclusive remedies for the vindication of those rights are set forth in §§ 482–483.

Finally, plaintiffs contend that they are merely attempting to comply with § 482 which requires the exhaustion of internal union remedies before a complaint can be filed with the Secretary of Labor. Specifically, § 482 requires that a union member either exhaust the remedies available under the union constitution *or* have invoked such remedies without obtaining a final decision within three months after their invocation. The purpose of this requirement is to aid in bringing about settlement through discussion *before* resorting to the courts. *See e.g., Wirtz v. Glass Bottle Blowers Association,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). The statute, itself, provides a method of exhausting internal remedies when the union is reticent in affording members their full range of rights and remedies under the union constitution. Here, plaintiffs have demanded the appointment of an election arbitrator from both the AAA and the IBC, and such requests have been denied. Accordingly, the claim that this suit is merely an effort to exhaust internal union remedies is without merit.

In sum, only the Secretary of Labor can bring an action, such as the present case, to invalidate an already conducted union election. If a private right of action was permitted the centralization of litigation and the limitation on judicial interference in union affairs which now exist would be disrupted. *See McBride, supra,* 612 F.2d at 36. The Court notes that plaintiffs have already filed a complaint with the Secretary of Labor encompassing the same claims as alleged in this suit. Cohen Affidavit, Exhibit E. Accordingly, it is within the sole discretion of the Secretary of Labor to determine whether to bring a private action. Accordingly, plaintiffs' complaint is dismissed for failure to state a claim.

### CONCLUSION

Defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12, is granted.

SO ORDERED.